Paul B. Mengedoth (018507)
**MENGEDOTH LAW PLLC**
20909 N. 90th Place, Suite 211
Scottsdale, AZ 85255
Tel: (480) 778-9100
Fax: (480) 778-9101
E-mail: paul@mengedothlaw.com

Attorney for Plaintiff Martin Valenzuela

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| MARTIN VALENZUELA, a married individual, <br><br> Plaintiff, <br><br> v. <br><br> EQUIFAX INFORMATION SERVICES, LLC, a Georgia corporation, EXPERIAN INFORMATION SOLUTIONS, INC., an Ohio corporation, TRANS UNION, LLC, a Delaware corporation, and CBCINNOVIS, INC. a Pennsylvania corporation, <br><br> Defendants. | No. _____ <br><br> **COMPLAINT** <br><br> **JURY TRIAL REQUESTED** |

Plaintiff Martin Valenzuela (hereinafter "Plaintiff" or "Mr. Valenzuela"), by and through undersigned, and for his cause of action against Defendants Equifax Information Services, LLC, (hereinafter "Equifax"), Experian Information Solutions, Inc. (hereinafter "Experian"), Trans Union LLC, (hereinafter "Trans Union"), and CBCInnovis, Inc. (hereinafter "CBCInnovis") and states as follows:

## I.    **PRELIMINARY STATEMENT**

1. Mr. Valenzuela brings this action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA") against four consumer reporting agencies: Trans Union, Equifax, Experian, and CBCInnovis.

2. When Congress enacted the FCRA in 1970 it mandated consumer reporting agencies ("CRAs") "maintain reasonable procedures to assure the maximum possible accuracy of the information" compiled regarding a consumer about whom a consumer report relates.

3. Mixed files are a serious problem in the credit reporting industry. According to the Federal Trade Commission consent orders, the term "mixed file" means a consumer report in which some or all of the information pertains to consumers other than the consumer who is the subject of that consumer report. Indeed, the CRA Defendants (defined below) have internal documents concerning mixed files, including manuals and procedures for identifying mixed files and handling mixed file disputes.

4. Mixed files create a false description of a consumer's credit history. Further, mixed files result in the disclosure of a consumer's personal information when the consumer did not apply for credit, employment, housing or insurance.

5. Mixed files also result in the debt collection harassment of innocent consumers because debt collectors use CRA databases to "skip trace" debtors and locate the alleged debtor's address and telephone number.

6. Mixed files are not a new phenomenon. CRAs have known about mixed files for at least forty (40) years. *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509 (5th Cir. 1982). The CRA Defendants were aware of the *Thompson* case before Plaintiff filed his instant lawsuit.

7. Mixed files occur despite consumers' unique personal identifying information, such as social security numbers. CRAs' matching logic allows information

2

to be included in a consumer's file even when the Social Security Numbers do not match nine out of nine digits.

8. For example, CRAs have been known to mix files when the consumer's names are similar, but the Social Security numbers match seven out of nine digits. *See Apodaca v. Discover Fin. Servs.*, 417 F.Supp. 2d 1220 (D.N.M. 2006). The CRA Defendants were aware of the *Apodaca* case before the plaintiff filed his instant lawsuit.

9. In the mid-1990's, the Federal Trade Commission ("FTC") and various state attorney generals' offices, including Alabama, Arkansas, California, Connecticut, Delaware, Florida, Idaho, Illinois, Louisiana, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Mexico, New York, Ohio, Pennsylvania, Rhode Island, Texas, Utah and Washington charged the nationwide consumer reporting agencies with violations of the FCRA. The government enforcement actions required the CRAs to improve their procedures and prevent mixed files. *See FTC v. TRW, Inc.*, 784 F.Supp. 361 (N.D. Tex. 1991)(amended by N.D. Tex. Jan. 14, 1993)(agreed order amending consent order);[1] *TRW, Inc. v. Morales*, CV-3-91-1340-H (N.D. Tex. Dec. 10, 1991); *In re Equifax Credit Information Services, Inc.*, (June 22, 1992); *In the Matter of Equifax Credit Information Services, Inc.*, 12 F.T.C. 577 (Aug. 14, 1995); *In the Matter of Equifax Credit Information Services, Inc.*, 61 Fed. Reg. 15484 (Apr. 8, 1996); and *Alabama v. Trans Union, Corp.,* CV- 92C 7101 (N.D. Ill. Oct. 26, 1992). The CRA Defendants agreed to, *inter alia*, maintain reasonable procedures to avoid: (i) including a consumer report information identifiable as pertaining to a consumer other than the consumer for whom a permissible purpose exists as to such report; and (ii) displaying files identifiable as pertaining to more than one consumer in response to a subscriber request on one consumer. Further, the CRA Defendants agreed to prevent reporting to subscribers that credit information pertains to a particular consumer unless the CRA has identified such information by at least two of the following identifiers: (i) the consumer's name; (ii) the consumer's Social Security number; (iii) the consumer's date

---

[1] In 1996, TRW became Experian.

3

1  of birth; (iv) the consumer's account number with a subscriber or a similar identifier
2  unique to the consumer. For public record information, in the event the public record
3  information does not include at least two of the above-described personal attributes, the
4  CRA Defendants agreed to identify the public record information by the consumer's full
5  name (including middle initial and suffix, if available) together with the consumer's full
6  address.

7      10.    In 2007, Angela Williams sued Equifax in Florida and alleged the CRA
8  mixed her file with another consumer with a similar name. The jury found in favor of
9  Angela Williams and entered a verdict against Equifax for over $2.9 million, including
10 $219,000 in actual damages and $2.7 million in punitive damages. The CRA
11 Defendants were aware of the judgment before Plaintiff filed this Complaint.

12     11.    In July of 2013, Ms. Miller sued Equifax in Oregon and alleged the CRA
13 mixed her file with another consumer who had a different social security number, date
14 of birth and address.  The jury found in favor of Ms. Miller and entered a verdict against
15 Equifax for over $18 million, including $180,000.00 in actual damages and $18.4
16 million in punitive damages.  The CRA Defendants were aware of the judgment before
17 Plaintiff filed this Complaint.

18     12.    In 2002, Ms. Judy Thomas sued Trans Union in Oregon and alleged the
19 CRA mixed her file with another consumer.  The jury found in favor of Ms. Thomas
20 and entered a verdict against Trans Union for over $5 million, including $300,000.00 in
21 actual damages for emotional distress and $5 million in punitive damages.  The CRA
22 Defendants were aware of the judgment before Plaintiff filed this Complaint.

23     13.    Over the last five (5) years, Experian's national counsel, Jones Day,
24 represented Experian in over one-hundred-and-forty-six (146) lawsuits where a claim
25 was made that Experian mixed the file of the plaintiff with another consumer.

26     14.    Despite federal law, Congressional mandates, federal and state
27 government enforcement actions, and hundreds of consumer lawsuits, mixed files
28 remain a significant problem for consumers, including Mr. Valenzuela.

4

15. 15. On March 31, 2013, Experian's parent corporation, Experian PLC, reported $4.7 billion in revenue.[2]

16. For December 31, 2012, Equifax reported operating revenue of $2.16 billion and net income from continuing operations attributable to Equifax of $272.1 million.[3]

17. For just the first six months of 2013, Trans Union reported over $591.3 million in revenue.[4]

18. The instant lawsuit seeks compensatory, statutory and punitive damages, costs of suit and attorneys' fees for Mr. Valenzuela, resulting from the CRA Defendants' failure to comply with the FCRA.

## II. JURISDICTION AND VENUE

19. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1681p.

20. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

21. Plaintiff is an adult citizen of the State of Arizona and resides within this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. §1681a(C).

22. Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with its principal place of business in the state of California. Experian does business in this judicial district. Experian Services Chile, SA ("Experian Chile") is Experian's sister company and is located in Santiago, Chile. Experian Chile processes consumer disputes made in writing to Experian. At all times relevant hereto, Experian Chile as an agent for Experian. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

23. Equifax Information Services, LLC ("Equifax") is a Georgia corporation with its principal place of business in the state of Georgia. Equifax does business in this

---

[2] http://www.experianplc.com/investor-centre/key-financial-data.aspx
[3] http://investor.equifax.com
[4] http://www.transunion.com/corporate/about-transunion/investor-relations.page

5

judicial district. Equifax outsources consumer requests to vendor companies in Costa Rica, India and the Philippines. At all times relevant hereto, Equifax's vendors acted as agents for Equifax. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

24.   Trans Union, LLC ("Trans Union") is a Delaware corporation with its principal place of business in the state of Illinois. Trans Union does business in this judicial district. Trans Union outsources consumer disputes to vendors in India, including Intelenet. At all times relevant hereto, Trans Union's vendors acted as its agent. Trans Union is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

25.   CBCInnovis, Inc. ("CBCInnovis") is a foreign corporation with its principal place of business, upon information and belief, in the State of Pennsylvania. CBCInnovis does business in this judicial district. CBCInnovis is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f) and a reseller of credit information as defined by 15 U.S.C. § 1681a(u).

26.   Experian, Equifax and Trans Union are referred to collectively throughout the Complaint as the "CRA Defendants."

27.   The CRA Defendants and CBCInnovis regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined by 15 U.S.C. §1681a(f) to third parties. Further, The CRA Defendants and CBCInnovis disburse consumer reports to third parties of contract for monetary compensation.

28.   CBCInnovis, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer credit information from the CRA Defendants.

29.   The consumer credit information maintained for individual consumers by the CRA Defendants consists of public record information, including, judgments and bankruptcies, account information and other consumer information.

6

30. Once CBCInnovis receives the requested consumer credit information, it assembles and merges the information into a CBCInnovis consumer credit report, which it then sells to third parties. In the credit reporting industry, this is known as a "tri-merge" credit report.

31. The CRA Defendants and CBCInnovis sell "consumer reports" concerning individuals who apply for credit, including retail credit and mortgage, employment, housing and insurance.

### III. FACTUAL ALLEGATIONS

32. The CRA Defendants and CBCInnovis have been reporting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties (hereinafter referred to as the "Inaccurate Information").

33. Specifically, the Inaccurate Information did not belong to Plaintiff, and included, but is not limited to, the following:

(a) An open Chase mortgage loan account ending in 1310 with principal amount of $176K with approximately $175K balance.

(b) An open Wells Fargo Home Mortgage loan account ending in 7821 with principal amount of $111K with approximately $97K balance.

(c) An open Bank of America home equity account ending in 3441 with a principal amount of $17K with approximately $17K balance.

(d) An open Bank of America reverse home equity mortgage account ending in 3599 with $50K principal amount with approximately $40K balance.

(e) A closed Bank of America mortgage account ending in 7059 with approximate $571K principal balance and $0 balance.

(f) A closed Bank of America mortgage account ending in 9674 with approximate principal balance of $136K and $0 balance.

(g) A closed Bank of America mortgage account ending in 3528 with approximate principal balance of $589K and $0 balance.

1   (h) Monticello mortgage account with approximate principal balance of $111K and a $0 balance.

3   (i) A Northern Arizona Credit Bureau auto collections account for an outstanding balance due of $770.00 with multiple delinquencies of 90+ days. (hereafter the "False Auto Collection Account 1")

6   (j) An open AMEX revolving credit card account ending in 7873 WITH $50K limit with approximate $4,900 balance.

8   (k) An open Kohls/Cap1 revolving charge account ending in 8560 with 1K limit with $220 balance.

10  (l) An open Discover Card revolving credit card account ending in 9097 with a $11,100 limit and $125.00 balance .

12  (m) An open Macys/DSNB – revolving charge account ending in 2640 with a 100 limit and $0 balance.

14  (n) An open Macys/DSNB – revolving charge account ending in 2620 with a 2K limit and $0 balance.

16  (o) An open Amex/DSNB – revolving credit cards account ending in 7332 with a 1K limit and $0 balance.

18  (p) An open GECB/CVRN credit card account ending in 0340 with a $2K limit and $0 balance.

20  (q) An open Amex revolving credit card account ending in 4693 with a 18K limit – no balance – last activity 1/10 and open.

22  (r) A closed Bank of America revolving account ending in 4299 with a credit limit of $150K and $0 balance.

24  (s) An open Amex revolving credit card account ending in 0132 with a credit limit of $18K and no balance.

26  (t) An open account with C.A.G. Acceptance L.L.C. placed for collection re: AMPM Towing (hereafter the "False Auto Collection Account 2").

1    (u)   An open after termination Chrysler Financial auto lease account with a balance owing of $633.00, or an open after termination TD Auto Finance lease account with a balance owing of $633.00 (hereafter the "False Open and Balance Owing Chrysler/TD Auto Account")

(v)   Alias/Former names of Maribel Valenzuela, Maribel Cisneros, Mirbel M. Martin Jr., Maribel Martin-Cisneros, Cisneros Maribel, Maribel Martin.

(w)   File Identifications: Marible Valenzuela with a false date of birth of August 21, 1969.

34.   In the immediately preceding paragraph, subparagraphs (a)-(d) are hereafter referred to as the "False Open Mortgage Loan Accounts," subparagraphs (e) – (h) are hereafter referred to as the "False Closed Mortgage Loan Accounts," subparagraph (i) is hereafter referred to as the "False Auto Collection Account 1," subparagraphs (j) – (s) are hereafter referred to as the "False Credit/Charge Card Accounts," subparagraph (t) is hereafter referred to as the False Auto Collection Account 2," subparagraph (u) is hereafter referred to as the "False Open and Balance Owing Chrysler/TD Auto Account," and subparagraph (v) – (w) is hereafter referred to as the "False Loose Matching Names, Social Security Number and Date of Birth"

35.   Finally, the information includes, but is not limited to, disclosures of Plaintiff's file to persons requesting the file of a different consumer. The identities of the recipients and dates of each unlawful disclosure are unknown to Plaintiff at this time.

36.   On or about May 29, 2013, Plaintiff made a loan application with Gencor Mortgage for a home loan for the purchase of a new home.

37.   At the time, Plaintiff had no idea all the foregoing Inaccurate Information was reporting about him by one or more of the CRAs and CBCInnovis.

38.   On or about June 3, 2013, Gencor requested CBCInnovis obtain consumer credit information about Plaintiff.

9

39. On or about June 3, 2013, CBCInnovis requested and obtained consumer credit information about the Plaintiff from the CRA Defendants and assembled and sold one or more tri-merge reports to Gencor.

40. The CRA Defendants supplied CBCInnovis a consumer report, consumer information, and a credit score for Plaintiff that was assembled and sold to Gencor in this tri-merge report.

41. On information and belief, at the time, Equifax was the only CRA Defendant reporting the four (4) False Open Mortgage Loan Accounts, the four (4) False Closed Mortgage Loan Accounts, eleven (11) of twelve (12) of the False Credit/Charge Card Accounts, and the False Loose Matching Names and Dates of Birth.

42. On information and belief, at the time, Experian was the only CRA Defendant reporting False Auto Collection Account 1.

43. On information and belief, at the time, Trans Union was the only CRA Defendant reporting the False Auto Collection Account 2.

44. Prior to CBCInnovis' sale of a consumer report about Plaintiff, CBCInnovis did nothing to reconcile the inconsistent reporting of the Inaccurate Information with the CRA Defendants.

45. CBCInnovis did nothing to investigate the conflicting information received from the CRA Defendants.

46. The CRA Defendants allowed and/or used loose match criteria to determine whether to include information pertaining to a person with a different Social Security number living at a different address within Mr. Valenzuela's consumer report.

47. CBCInnovis knew about mixed files prior to the instant lawsuit.

48. Based on the CRAs' credit score models, the information contained in Mr. Valenzuela's file negatively affects his credit score. In other words, incorrect consumer reports prepared by the CRA Defendants decreased Mr. Valenzuela's credit score and increased the perceived risk to his existing and potential creditors and insurers.

10

49. Upon information and belief, Mr. Valenzuela's credit score is lower when the Incorrect Information is considered when calculating his credit score.

50. More generally, the Incorrect Information reflects negatively on Mr. Valenzuela, his financial responsibility as a debtor, his total outstanding indebtedness and debt/income ratios, his credit worthiness and inaccurately depicts him.

51. The Inaccurate Information was a substantial factor in Gencor refusing to continue to process Mr. Valenzuela's mortgage loan application and permit him to prequalify for credit, thereby denying Mr. Valenzuela access to credit.

52. The Defendants have reported the Inaccurate Information through the issuance of false and inaccurate credit information and consumer reports that the CRA Defendants and CBCInnovis disseminated to persons, as that term is contemplated by 15 U.S.C. §1681a(b).

53. Mr. Valenzuela disputed the Inaccurate Information to the CRA Defendants and CBCInnovis.

54. The CRA Defendants received more than one dispute concerning Plaintiff and some or all of the Incorrect Information.

55. Experian, Equifax, Trans Union and CBCInnovis never contacted third parties that would have relevant information concerning the disputed information.

56. Equifax, Equifax, Trans Union and CBCInnovis never contacted Mr. Valenzuela to follow up on, verify and/or elicit more specific information about his disputes.

57. Equifax, Equifax, Trans Union and CBCInnovis have never forwarded any or all relevant information concerning Plaintiff's disputes to the persons originally furnishing the inaccurate information.

58. Equifax, Equifax, Trans Union and CBCInnovis have never requested or obtained any credit applications, court records, or other relevant documents from the entities (the identities of which are unknown to Plaintiff at this time) furnishing the inaccurate information.

11

59. More specifically, other than an Automated Consumer Dispute Verification ("ACDV"), the CRA Defendants did not provide data furnishers, such as creditors or debt collectors, with personal identifying documents supplied by Mr. Valenzuela in support of his disputes.

60. At least one of Mr. Valenzuela's disputes of the Incorrect Information included a dispute to all the CRA Defendants that he had not already paid off the $633.00 allegedly owing on the False Open and Balance Owing Chrysler/TD Auto Account.

61. Mr. Valenzuela paid more than the amount allegedly owing on the False Open and Balance Owing Chrysler/TD Auto Account in April of 2013 to Enhanced Recovery Company, LLC, agent for TD Auto Finance and/or Chrysler Financial.

62. The CRA Defendants did not reinvestigate Mr. Valenzuela's dispute of the False Open and Balance Owing Chrysler/TD Auto Finance Account, or forward all relevant information to Chrysler Financial or TD Auto Finance.

63. The CRA Defendants continued to report the False Open and Balance Owing Chrysler/TD Auto Finance Account.

64. As a direct and proximate cause of the CRA Defendants' failure to perform a reasonable or any reinvestigation of his disputes, Quicken Loans Inc. also denied Mr. Valenzuela a mortgage loan.

65. The CRA Defendants failed to remove the Inaccurate Information from Mr. Valenzuela's file and/or failed to respond to take make any reinvestigation within thirty (30) days of receiving Mr. Valenzuela's dispute.

66. CBCInnovis failed to assure the maximum possible accuracy of the consumer report concerning Plaintiff that it supplied to persons.

67. The CRA Defendants failed to assure the maximum possible accuracy of the consumer report concerning Plaintiff that it supplied to persons.

68. At all times relevant hereto, the defendants were acting through their agents, servants and/or employees who were acting within the scope of their employment or agency, or both, and under the direct supervision of the defendants.

69. The Defendants' unlawful conduct proximately caused Plaintiff's actual damages, including but not limited to: harm to credit reputation; credit denials; unfavorable credit terms; reduction in credit score; emotional distress and mental anguish; out-of-pocket expenses; and time.

### III. CAUSES OF ACTION

### COUNT I
### WILLFUL AND/OR NEGLIGENT VIOLATIONS OF THE FEDERAL FAIR CREDIT REPORTING ACT - 15 U.S.C. § 1681e(b)
*Plaintiff v. Defendants*

70. Plaintiff incorporates as if fully set out herein all the preceding paragraphs.

71. The CRA Defendants and CBCInnovis are liable to Plaintiff for willfully and negligently failing to comply with the Fair Credit Reporting Act 15 U.S.C. §1681e.

72. The CRA Defendants and CBCInnovis violated 15 U.S.C. §1681e(b) by failing to establish or follow reasonable procedures to assure the maximum accuracy in the preparation of the credit report and credit files they published and maintained concerning Plaintiff.

73. Pursuant to 15 U.S.C. § 1681o of the Fair Credit Reporting Act, the Defendants' actions in negligently violating the Fair Credit Reporting Act entitle the Plaintiff to recovery of her actual damages as well as attorneys' fees and costs.

74. In addition, the CRA Defendants' actions in willfully violating the Fair Credit Reporting Act entitle the Plaintiff to the recovery of her actual damages, punitive damages, attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

75. The Defendants' conduct was a substantial factor in directly and proximately causing Plaintiff's injuries and damages as outlined above.

13

76. The defendants are liable to Plaintiff for the full amount of statutory, actual and punitive damages, plus attorneys' fees and costs.

77. Plaintiff seeks judgment in his favor against the CRA Defendants and CBCInnovis, based on the following relief requested: (a) Actual damages; (b) Statutory damages; (c) Punitive Damages; (d) Costs and reasonable attorneys' fees; and (e) Such other and further relief as may be necessary, just and proper.

## COUNT II
## WILLFUL AND/OR NEGLIGENT VIOLATIONS OF THE FEDERAL FAIR CREDIT REPORTING ACT - 15 U.S.C. § 1681i
### *Plaintiff v. CRA Defendants*

78. Plaintiff incorporates as if fully set out herein all the preceding paragraphs.

79. Defendant Equifax violated 15 U.S.C. §1681i on multiple occasions by failing to: delete inaccurate information in Plaintiff's credit file after receiving actual notice of such inaccuracies; conduct a lawful investigation; forward all relevant information to the furnisher of the inaccurate information; maintain reasonable procedures with which to filter and verify disputed information in the plaintiff's credit file; and by relying upon verification from a source it had reason to know is unreliable.

80. Defendant Experian violated 15 U.S.C. §1681i on multiple occasions by failing to: delete inaccurate information in Plaintiff's credit file after receiving actual notice of such inaccuracies; conduct a lawful investigation; forward all relevant information to the furnisher of the inaccurate information; maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it had reason to know is unreliable.

81. Defendant Trans Union violated 15 U.S.C. §1681i on multiple occasions by failing to: delete inaccurate information in Plaintiff's credit file after receiving actual notice of such inaccuracies; conduct a lawful investigation; forward all relevant information to the furnisher of the inaccurate information; maintain reasonable

procedures with which to filter and verify disputed information in the plaintiff's credit file; and by relying upon verification from a source it had reason to know is unreliable.

82. The CRA Defendants' conduct was a substantial factor in directly and proximately causing Plaintiff's injuries and damages as outlined above.

83. Pursuant to 15 U.S.C. § 1681o of the Fair Credit Reporting Act, the Defendants' actions in negligently violating the Fair Credit Reporting Act entitle the Plaintiff to recovery of her actual damages as well as attorneys' fees and costs.

84. In addition, the CRA Defendants' actions in willfully violating the Fair Credit Reporting Act entitle the Plaintiff to the recovery of her actual damages, punitive damages, attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

85. Plaintiff seeks judgment in his favor against the CRA Defendants based on the following relief requested: (a) Actual damages; (b) Statutory damages; (c) Punitive Damages; (d) Costs and reasonable attorneys' fees; and (e) Such other and further relief as may be necessary, just and proper.

## IV. DEMAND FOR JURY TRIAL

87. Plaintiff requests a trial by jury as to all issues so triable.

DATED the 5th day of November, 2013.     **MENGEDOTH LAW PLLC**

           /s/ Paul B. Mengedoth
Paul B. Mengedoth
20909 N. 90th Place, Suite 211
Scottsdale, AZ 85255
Attorney for Plaintiff Martin Valenzuela

15