**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin Valenzuela,<br><br>           Plaintiff,<br><br>v.<br><br>Equifax Information Services LLC, et al.,<br><br>           Defendants. | No. CV-13-02259-PHX-DLR<br><br>**ORDER** |

     Before the Court is Defendant Equifax Information Services LLC's ("Equifax") Motion to Exclude Plaintiff's Proposed Expert Witness. (Doc. 114.) The motion is fully briefed. For the following reasons, Equifax's motion is granted in part.

## **BACKGROUND**

     In May 2013, Plaintiff Martin Valenzuela applied for a home loan with Gencor Mortgage. (Doc. 1, ¶ 36.) As part of the application process, Gencor requested Valenzuela's consumer credit information. (*Id*., ¶¶ 38-39.) Equifax supplied a tri-merge consumer report containing Valenzuela's consumer report, consumer information, and credit score. (*Id.*, ¶¶ 40-41.) Valenzuela alleges that the Equifax report contained "derogatory and inaccurate" information about his credit history. (*Id.*, ¶ 32.) Specifically, the report contained four open mortgage loan accounts, four closed mortgage loan accounts, and eleven credit/charge card accounts, none of which belonged to Valenzuela. (*Id*., ¶ 33.) The report also listed several aliases/former names and a date of birth of August 21, 1969 – all of which were incorrect. (*Id*.) Gencor and Quicken

Loans Inc. subsequently denied Valenzuela's loan applications. (*Id*., ¶¶ 51, 64.)

Valenzuela claims Equifax used "loose match criteria" when determining what information was placed in his consumer report. (*Id*., ¶ 46.) He contends that the loose match criteria created a mixed-file and caused the inaccurate report. (*Id*.) These inaccuracies, Valenzuela claims, negatively affected his credit score and were a "substantial factor" in the denial of his loan applications. (*Id*., ¶¶ 49-51.)

Valenzuela sued Equifax under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, alleging that Equifax willfully and/or negligently failed to prevent and correct the inaccurate credit report, and seeking statutory, punitive, and actual damages. (*Id.* at 13-15.) To prove Equifax's alleged noncompliance and the resulting damages, Valenzuela intends to offer the testimony of Evan Hendricks as an expert witness. (Doc. 115 at 4-5.) Equifax moves to exclude Hendricks' testimony. (Doc. 114.)

## **LEGAL STANDARD**

Federal Rule of Evidence 702 governs expert witness testimony and provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Ev. 702. The trial judge serves as a gatekeeper to ensure that expert testimony is relevant and reliable, and has broad discretion when exercising this function. *United States v. Hankey*, 203 F.3d 1160, 1167-68 (9th Cir. 2000). When considering the admissibility of expert testimony based on specialized knowledge, Rule 702 is "construed liberally." *Id.* at 1168. Expert testimony is relevant when it has a "'valid . . . connection to the pertinent inquiry,'" and reliable when "it 'has a reliable basis in the knowledge and experience of [the relevant] discipline.'" *United States v. Sandoval-Mendoza*, 472 F.3d

645, 654 (9th Cir. 2006) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)).  The trial judge also considers whether the probative value of the proffered testimony "is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time." *Hankey*, 203 F.3d at 1168.  The proponent of the expert has the burden of proving admissibility.  *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

## DISCUSSION

Hendricks' testimony concerns four subjects:  (1) the reasonableness of Equifax's credit reporting policies and procedures; (2) Equifax's motivations and intentions; (3) Valenzuela's damages; and (4) past FCRA cases and agreements involving Equifax.  Equifax argues that Hendricks is not a qualified expert, does not use a reliable methodology or offer testimony helpful to the trier of fact, and that the probative value of his testimony is substantially outweighed by the danger of unfair prejudice. (Doc. 114 at 1.)  Valenzuela contends that Hendricks' thirty-three years researching and writing on FCRA matters, testifying before both houses of the United States Congress, and admission as an expert witness in over twenty-five trials in state and federal courts qualifies him as an expert.  (Doc. 115 at 4, 7.)  He asserts that Hendricks will assist the jury by explaining:  (1) the inner-workings of the credit reporting industry; (2) the context for damages from similar credit reporting inaccuracies; (3) the nature and calculation of credit scores; and (4) the reasonableness of Equifax's policies and procedures in light of repeated notice regarding possible FCRA violations.  (*Id*. at 2.)  Finally, Valenzuela argues that Hendricks' methods are reliable because his analysis is thoroughly explained and his conclusions are based on his years of experience.  (*Id*. at 12-13.)

**I.  Reasonableness of Equifax's Policies and Procedures**

Hendricks is qualified to testify about Equifax's "inner workings" and opine on the reasonableness of its credit reporting policies and procedures.  For thirty-three years, Hendricks researched, wrote, edited, and published a bi-weekly newsletter covering various aspects of the FCRA.  (Doc 114-2 at 28.)  For ten years, he served as a privacy

expert consultant for the Social Security Administration, where he reviewed policies and practices regarding use and disclosure of personal data. (*Id*.) Hendricks also has a FCRA certification from the National Credit Reporting Association. (Doc. 114-2 at 32.) Additionally, Hendricks has testified about the FCRA and related matters before the United States House Financial Services Committee and Senate Banking Committee, and has been admitted as an expert witness to testify on similar matters in both state and federal courts.[1] (*Id*. at 28-29, 33-41.) These experiences qualify Hendricks to offer expert witness testimony on certain topics in this case. For example, Hendricks may testify about the indicia of a mixed file, typical and best practices for identifying and correcting a mixed file, and the FCRA's standards for correcting a mixed file. Contrary to Equifax's assertions, this information is not common sense or within a layperson's knowledge. Indeed, a layperson is not likely to have independent knowledge of the intricacies of a partial matching algorithm, the role it plays in developing a credit report, and the reasonableness of the Automated Consumer Dispute Verification Exchange ("ACDV"). Hendricks' specialized knowledge on these topics will assist the trier of fact.

Equifax contends that Hendricks' testimony is unreliable because Hendricks does not explain the methods used to derive his conclusions. (Doc. 114-1 at 7.) "As a prerequisite to making the Rule 702 determination that an expert's methods are reliable, the court must assure that the methods are adequately explained." *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002). There must be a connection between the witness' knowledge and the particular conclusions drawn. *Id.* at 1095. Hendricks will opine on the reasonableness of Equifax's actions and/or inactions. (Doc. 115 at 12-13.) His testimony is based on his experience and research in FCRA matters. (*Id*.) Thus, his method is simply an application of his experience with and understanding of the

---

[1] Although one cannot "become an expert simply by accumulating experience testifying," *Elcock v. Kmart Corp.*, 233 F.3d 734, 744 n.5 (3d Cir. 2000) (quoting *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989)), Hendricks has done more than simply accumulate experience testifying.

FCRA and the credit reporting industry to the facts at hand. Although his methods are not meticulously detailed for every conclusion, they can be understood and are reliable. Moreover, "shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

Additionally, Equifax claims Hendricks is not qualified to discuss Equifax's current policies and procedures because he does not directly cite the current policies and procedures in his expert opinion. Although Hendricks does not cite the depositions of Pamela Smith and Margaret Leslie,[2] or to any of Equifax's written policies and procedures related to mixed consumer files and reinvestigations, he is qualified to discuss Equifax's "inner workings" because of his experience with credit reporting agencies, including his expert witness experience in previous Equifax cases. Moreover, to the extent Hendricks' statements about Equifax's relevant policies and procedures are inaccurate, Equifax can explore such inaccuracies on cross examination. Accordingly, Hendricks may opine on the reasonableness of Equifax's credit reporting policies and procedures.

**II. Equifax's State of Mind**

Hendricks' testimony about Equifax's motivations, intentions, objective state of mind, and subjective beliefs is improper because it usurps the province of the fact-finder, which is responsible for drawing reasonable inferences about Equifax's state of mind from the evidence presented at trial. Hendricks' opinion will not assist the fact-finder in drawing these inferences. He will not be permitted to opine on these subjects.

**III. Valenzuela's Damages**

Hendricks intends to discuss the negative effects of inaccurate credit reports, which could affect damages. (Doc. 114-2, ¶¶ 60-62.) These include: (1) effects of

---

[2] Hendricks acknowledges that he wrote his report before any depositions were taken; however, he reserved the right to supplement the report. (Doc. 114-2 at 1.)

inaccurate credit reports, (2) improper denial of credit, (3) the value of time and energy to correct errors, (4) wrongfully received debt collection calls, (5) the chilling effect in applying for credit, (6) sleeplessness and physical symptoms, (7) sense of helplessness, and (8) emotional distress. (*Id*., ¶ 61.) Equifax contends Hendricks "lacks the expertise necessary to opine that a 'sense of helplessness' leads to monetary damages." (Doc. 114-1 at 6.) Likewise, because he is not an "accountant, economist, or financial planner," he does not have "the expertise necessary to opine that a consumer may be damaged based on 'the time and energy required to solve' his purported 'problem' . . . ." (*Id*.) Valenzuela responds that Hendricks' testimony will provide "helpful context" for determining damages, and that Hendricks is qualified to address these topics because they are "typical consequences of false credit reports." (Doc. 115 at 11.)

Hendricks is not qualified to address physical, emotional, or economic effects of an inaccurate credit report, or to estimate the value of "expended time and energy to correct errors . . . in addition to loss of time and energy, loss of opportunity." Moreover, his testimony will not assist the fact-finder because Valenzuela may testify about how the alleged credit reporting inaccuracies impacted him physically, emotionally, and economically, and about the time and energy he spent to resolve the alleged credit reporting inaccuracies. Hendricks will not be permitted to opine on Valenzuela's damages.

**IV.  Past FCRA Cases and Agreements Involving Equifax**

Equifax objects to Hendricks' testimony concerning previous FCRA cases, consent decrees, and administrative actions involving Equifax. (Doc. 114-1 at 14.) Hendricks and Valenzuela assert that the purpose of introducing these prior acts is to show that Equifax had notice of the potential FCRA violations at issue. (Doc. 114-2, ¶ 86.) Regardless of whether these prior actions are admissible to establish notice, Valenzuela does not explain why expert testimony is necessary to establish their existence. It appears that Hendricks merely is recounting the facts of prior cases in which he offered expert witness testimony. No specialized knowledge, skill, or experience is

necessary to understand the existence and subjects of these prior cases, consent decrees, and administrative actions. Nor would Hendricks' testimony assist the fact-finder in learning of these actions and drawing reasonable inferences from them. Accordingly, regardless of whether evidence of these prior actions is admissible to establish notice, Hendricks will not be permitted to testify about them.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Hendricks is qualified to offer certain expert witness testimony regarding the reasonableness of Equifax's credit reporting policies and procedures. However, his testimony concerning Equifax's state of mind, Valenzuela's damages, and the facts of other cases involving Equifax is not proper.

**IT IS ORDERED** that Equifax's Motion to Exclude Plaintiff's Proposed Expert Witness, (Doc. 114), is **GRANTED IN PART.**

Dated this 6th day of November, 2015.

Douglas L. Rayes
United States District Judge